In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-3675

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JOSE MANUEL ANAYA-AGUIRRE,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:10-cr-01094—**James B. Zagel**, *Judge.*

ARGUED SEPTEMBER 24, 2012—DECIDED JANUARY 10, 2013

Before BAUER, FLAUM, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Appellant Jose Manuel Anaya-Aguirre violated 8 U.S.C. § 1326(a) by illegally reentering the United States after a prior deportation that had followed a felony conviction in the United States. He pled guilty and was sentenced to 48 months in prison. Anaya-Aguirre argued in the district court that he should receive a below-guideline sentence because the Northern District of Illinois did not have a "fast-

track" program. Fast-track programs in some districts offer certain categories of defendants — including many in immigration cases — shorter sentences in exchange for very prompt guilty pleas, the waiver of nearly all trial and appellate rights, and other conditions. While the district court imposed a sentence that was below the guideline range, it is clear that the downward variance was not based on the lack of a fast-track program. Anaya-Aguirre has appealed his sentence, arguing that the district court erred by rejecting his fast-track mitigation argument. We affirm.[1]

We have jurisdiction over this appeal under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291. We review *de novo* questions of law, including those concerning alleged procedural errors in sentencing. *United States v. Vallar*, 635 F.3d 271, 277-78 (7th Cir. 2011). We review discretionary sentencing decisions for an abuse of discretion judged by the reasonableness of the sentence. *Gall v. United States,* 552 U.S. 38, 51 (2007); *United States v. Booker,* 543 U.S. 220, 261 (2005). "A sentence is reasonable if the district court gives meaningful consideration to

---

[1] At the time of Anaya-Aguirre's sentencing, none of the districts in the Seventh Circuit had fast-track programs. In January 2012, however, the Department of Justice changed its policy and now requires all districts prosecuting § 1326 violations to institute fast-track programs. See Memorandum from Deputy Attorney General James M. Cole to All United States Attorneys, *Department Policy on Early Disposition or "Fast-Track" Programs* (Jan. 31, 2012), *available at* www.justice.gov/dag/fast-track-program.pdf.

the factors enumerated in 18 U.S.C. § 3553(a)." *United States v. Shannon*, 518 F.3d 494, 496 (7th Cir. 2008).

Anaya-Aguirre offers at least five separate arguments for reversing the denial of his fast-track mitigation argument: two procedural arguments and a cluster of related constitutional theories. On the procedural side, he argues that the government should be estopped from opposing his request for a downward variance because the prosecutor affirmatively misled him about the ability to make a fast-track disparity argument at sentencing. He also argues that the district court incorrectly believed it did not have discretion to grant him a downward variance based on the district's lack of a fast-track program.

The several constitutional claims are all based on a misunderstanding of our decision in *United States v. Ramirez*, 675 F.3d 634 (7th Cir. 2011), which set forth the circumstances in which a district court would need to explain why it was rejecting a fast-track disparity argument. Anaya-Aguirre incorrectly contends that *Ramirez* created a set of "prerequisites" a defendant must fulfill before he may argue for or receive a downward variance based on a fast-track disparity. He challenges some of these supposed prerequisites on constitutional grounds, including due process, equal protection, and self-incrimination, but the arguments are based on that misunderstanding of *Ramirez*, which did not impose any restraints on a defendant's ability to present mitigating arguments at sentencing nor limit a district court's discretion to accept fast-track disparity arguments.

In explaining our rejection of these arguments, we first briefly review this circuit's approach to fast-track disparity arguments, with particular attention to *United States v. Reyes-Hernandez*, 624 F.3d 405 (7th Cir. 2010), which granted sentencing courts the discretion to consider fast-track disparity as part of their analysis of sentencing factors under 18 U.S.C. § 3553(a). We then discuss *Ramirez*, which guides sentencing courts' review of these arguments.

I. *Fast-Track Sentences*

Fast-track programs are a bargain for both defendants and overworked prosecutors, especially in districts with high volumes of immigration violations. The defendant receives a sentence below the guideline range while the prosecution secures a swift and final conviction and punishment. The defendant facilitates the process by pleading guilty promptly and waiving the right to trial and appeal. In exchange, the prosecution agrees to recommend a below-guideline sentence. See U.S.S.G. § 5K3.1. For a thorough treatment of the history of fast-track programs, see, *e.g.*, *Reyes-Hernandez*, 624 F.3d at 409-12; Jane L. McClellan & Jon M. Sands, *Federal Sentencing Policy Guidelines & the Policy Paradox of Early Disposition Programs: A Primer on "Fast-Track" Sentences*, 38 Ariz. St. L.J. 517, 517-24 (2006).

As fast-track programs evolved based on caseload pressures, especially in southern border districts, the details differed from one district to another. After

Congress embraced fast-track sentencing in the PRO-TECT Act of 2003, the Attorney General imposed five requirements that all defendants seeking a fast-track sentence must satisfy: (1) plead guilty "within a reasonably prompt period after the filing of federal charges, to be determined based upon practice in the district;" (2) agree to the government's factual account of the offense; (3) forfeit the right to make all motions authorized by Federal Rule of Criminal Procedure 12(b)(3); (4) waive the right to appeal; and (5) waive the opportunity to challenge the conviction under 28 U.S.C. § 2255, except for ineffective assistance of counsel claims. See Memorandum from the Attorney General to All United States Attorneys, *Department Principles for Implementing an Expedited Disposition or "Fast-Track" Prosecution Program in a District* (Sept. 22, 2003), *available at* http://www.justice.gov/ag/readingroom/ag-092203.pdf (hereinafter 2003 DOJ Memorandum).

II. *Fast-Track Sentencing Disparities and the Seventh Circuit*

Until very recently, there have been no fast-track programs in any districts in the Seventh Circuit, so a number of defendants who might have been eligible for fast-track sentencing if they had been prosecuted in other districts argued that the lack of a formal fast-track program was a mitigating factor for their sentences. In *Reyes-Hernandez*, we overruled an earlier decision and held that district courts in the Seventh Circuit can properly use their post-*Booker* discretion to

consider such arguments. 624 F.3d 405, 417-19 (7th Cir. 2010). We said at that time that a defendant making the fast-track disparity argument "must first have been eligible for fast-track status had it been available and show that he would have in fact pursued the option. . . ." *Id*. at 420. There quickly followed a number of appeals in which defendants had made fast-track mitigation arguments and district courts had rejected them, sometimes with little or no discussion.[2]

In *Ramirez*, decided after Anaya-Aguirre's sentencing, we answered a narrow question arising in the wake of *Reyes-Hernandez*: "As this court made clear in *United States v. Reyes-Hernandez*, 624 F.3d 405 (7th Cir. 2010), district courts *may* consider a fast-track argument, but they are not required to consider one. This opinion addresses a different question — when is a district court *obliged* to comment on a fast-track argument." 675 F.3d at 641 n.2. We held: "unless the defendant has shown that he is similarly situated to persons who actually would receive a benefit in a fast-track district," the district court is not required to provide reasons for rejecting the fast-track disparity argument. *Id.* at 636. Thus, *Ramirez* explained when a district court must address the argument explicitly. It did not limit a district court's discretion or ability to consider any

---

[2] See, *e.g.*, *United States v. Abasta-Ruiz*, 409 Fed. Appx. 949 (7th Cir. 2011); *United States v. Vazquez-Pita*, 411 Fed. Appx. 887 (7th Cir. 2011); *United States v. Morant-Jones*, 411 Fed. Appx. 885 (7th Cir. 2011).

mitigation arguments, including those based on fast-track disparities.

Under *Ramirez*, a district court must address a fast-track disparity argument explicitly only when the defendant has made a sufficient evidentiary showing that he would be eligible for fast-track treatment in a district with such a program. This holding was not revolutionary but common-sense: "This requirement of a foundation for a claim of fast-track disparity simply recognizes that *every* defendant who asserts that his or her personal circumstances warrant leniency is compelled to supply a factual predicate for the contention." 675 F.3d at 641. To establish that factual predicate such that the sentencing court must take the time to comment on the argument, the defendant must show that he acted exactly like the defendant in a fast-track district. *Ramirez* instructed sentencing courts that, absent this evidentiary showing of the defendant's actions, the court would not err by concluding that a fast-track argument is "illusory" and therefore "may be passed over in silence." *Id.* at 636.

On this point, *Ramirez* only repeated what should have been evident. To succeed on a fast-track mitigation argument or to appeal successfully the silent rejection of such an argument, defendants must show that they are "similarly situated" to defendants in fast-track districts. "That means the defendant must promptly plead guilty, agree to the factual basis proffered by the government, and execute an enforceable waiver of specific rights before or during the plea colloquy. It

also means that the defendant must establish that he would be eligible to receive a fast-track sentence in at least one district offering the program and submit the likely imprisonment range in that district." *Id.*

Anaya-Aguirre argues, though, that *Ramirez* created a new set of requirements for arguing the absence of a fast-track program as a mitigating factor. This reading of *Ramirez* is wrong. *Ramirez* did not create a set of affirmative acts that the defendant must complete before the judge would be permitted to consider a fast-track disparity argument. We now turn to the specific facts of this case and the district court's rejection of Anaya-Aguirre's fast-track mitigation argument.

III.  *The Proceedings Here*

Anaya-Aguirre, a Mexican citizen, illegally reentered the United States and was picked up by immigration officials on December 21, 2010. He was arrested and charged with violating § 1326(a) shortly thereafter. A grand jury indicted him on January 13, 2011. On January 27, 2011, Anaya-Aguirre's attorney sent an email to the prosecutor saying in pertinent part that *Reyes-Hernandez* "states that a fast track sentence is applicable where a defendant waives pre-trial motions, an appeal and a 2255 other than ineffective assistance and a defendant must be eligible for fast track if it was available. Can you draw a plea agreement based on fast track sentencing?" The government responded on February 1, 2011 explaining, "Regarding the Fast-Track. Our district

does not have it and our office will not draft plea agreements as if we did. However, as the opinion in *Reyes-Hernandez* states, the fact that our district does not have a fast-track program can be argued as a 3553(a) factor at sentencing.*"* Prior to this email exchange, the government had offered Anaya-Aguirre a plea agreement which he rejected, in part, because "it did not offer him any benefits." The government's email therefore also informed Anaya-Aguirre's attorney that "the plea agreement I sent to you won't be revised."

On May 10, 2011, four months after Anaya-Aguirre's indictment, he changed his plea to guilty but without a plea agreement with the government. The guilty plea did not include a waiver of any of his appellate rights. At his sentencing on November 9, 2011, Anaya-Aguirre submitted a "waiver of rights for fast track sentencing." He offered this waiver ten months after his indictment and six months after his guilty plea.[3]

In his sentencing memorandum, Anaya-Aguirre argued for a below-guideline sentence based on the lack

---

[3] In his brief, Anaya-Aguirre claims that he attempted to waive his relevant trial and appellate rights in his attorney's email requesting a fast-track sentence. Def. Br. at 18-19. This claim lacks merit. We will not read a waiver of such fundamental rights implicitly based on an *ex post* assertion made on appeal. More to the point, such a waiver would prove wholly unenforceable, which would not satisfy the requirements in the fast-track districts. See 2003 DOJ Memorandum (requiring that "defendant enter into a written plea agreement that includes" all relevant waivers).

of a fast-track program in the Northern District of Illinois and his purported eligibility for such a program. The government opposed the idea, arguing that Anaya-Aguirre had failed to act as if he were in a fast-track district. The district court rejected Anaya-Aguirre's fast-track disparity argument but imposed a below-guideline sentence on other grounds.

IV.  *Legal Analysis*

We turn now to Anaya-Aguirre's legal arguments, first the estoppel and procedural arguments, and then the constitutional arguments.

A.  *Estoppel*

Anaya-Aguirre argues that that the government should be estopped from opposing a fast-track variance because of its response to his attorney's original request for a fast-track plea agreement. He contends he was misled by the prosecutor's response, which said that the Northern District of Illinois did not have a fast-track program but that Anaya-Aguirre could raise the issue at sentencing pursuant to *Reyes-Hernandez*. The government argued that, as *Reyes-Hernandez* itself had explained, a defendant making a fast-track disparity argument "must first have been eligible for fast-track status had it been available and show that he would have in fact pursued the option . . . ." 624 F.3d at 420. Anaya-Aguirre had failed to make those showings.

There are three traditional elements of estoppel: "(1) misrepresentation by the party against whom estoppel is asserted; (2) reasonable reliance on that misrepresentation by the party asserting estoppel; and (3) detriment to the party asserting estoppel." *United States v. Gatewood*, 965 F.2d 413, 417 (7th Cir. 1992). When a party seeks to estop the government, the party must also show that the government committed affirmative misconduct, which requires "more than mere negligence." *Gibson v. West*, 201 F.3d 990, 994 (7th Cir. 2000) (citation omitted). If any one of these elements is not satisfied, the estoppel claim fails. Anaya-Aguirre's estoppel argument fails because he cannot show affirmative misconduct or misrepresentation by the government, nor can he show reasonable reliance.

1. *No Affirmative Misconduct*

Anaya-Aguirre has not shown affirmative misconduct by the prosecutor. The prosecutor's response to Anaya-Aguirre's first request for a fast-track plea agreement pointed out that the Northern District of Illinois had no such program but that Seventh Circuit case law would allow the defendant to make the argument at sentencing. There was nothing at all deceptive about this response. The prosecutor went so far as to direct defense counsel to the relevant case, though both lawyers were already familiar with it. The prosecutor was not required to provide defense counsel a detailed and precise account of the applicable law; he could look that up for himself. The prosecution did not

mislead the defendant or his counsel and did not secure any unfair advantage. Furthermore, the prosecutor's argument at sentencing, to the effect that Anaya-Aguirre had failed to show he could have qualified for fast-track status under any program in any other district, was both accurate and fair, and it was consistent with the teaching of *Reyes-Hernandez*.

### 2. *No Misrepresentation or Reasonable Reliance*

Anaya-Aguirre argues that the prosecutor's email led him to believe that the government would not oppose a fast-track sentence based on his failure to plead guilty promptly and to waive his trial and appellate rights because the government would not draft a fast-track plea agreement. We see neither misrepresentation nor reasonable reliance on a false statement or promise. The email was an accurate and concise explanation of the law at the time: The Northern District of Illinois did not have a fast-track program, and after *Reyes-Hernandez*, defendants were free to argue for a downward variance on that basis at sentencing. Both counsel were familiar with *Reyes-Hernandez* and each could read it for himself. The prosecutor did not discourage defense counsel from preparing to make the showing that *Reyes-Hernandez* required: that the defendant would have been eligible for fast-track status if it had been available and that he would have pursued that course. 624 F.3d at 420.

B. *Procedural Error*

Anaya-Aguirre argues next that the district court made an error of law because it believed it did not have the discretion to reduce his sentence based on the fast-track disparity argument. In response to the fast-track argument, the district court noted that the legal land-scape concerning the consideration of fast-track dis-parities at sentencing in non-fast-track districts was unclear before *Ramirez*. The district court compared the situation to two Supreme Court decisions decided the day of the hearing in which habeas relief had been denied despite state courts' legal errors because the law was unclear at the time.

In reference to these cases the district court explained why the estoppel argument failed:

> The Supreme Court said you still don't get habeas corpus because the statute says if the law is not clearly defined at the time of the decision you make, then we honor your decision. And, indeed, in one case, the Supreme Court said, basically, the Ohio Supreme Court was wrong but they couldn't have known that they were wrong at the time they made it, and the habeas corpus was denied. And this is, roughly, the position we're in here.

Anaya-Aguirre claims the district judge referred to these two cases not by way of analogy in relation to the estoppel issue but instead because the judge believed "that the two Supreme Court opinions cited above pre-cluded him from considering a fast-track sentence." Def. Br. at 20.

We are not persuaded that the district judge misunderstood his authority. The veteran district judge showed that he knew he had the discretion to adjust the sentence downward based on the lack of a fast-track program, explaining that it would be "an argument for a variance in the guideline." The judge correctly acknowledged that the argument was not a legal argument so much as an argument for an exercise of his discretion to sentence below the guideline range, and the judge actually exercised that discretion to sentence below the range on other grounds. The district judge did not legally err in his understanding of fast-track disparity mitigation arguments at sentencing.

### C.  *Substantive "Requirements" in Ramirez*

Anaya-Aguirre claims that several of the supposed requirements *Ramirez* places on defendants who want to raise fast-track disparity arguments at sentencing are unconstitutional. He argues that the "requirement" that a defendant inform the sentencing court of districts in which he would not be eligible for a fast-track sentence violates his Fifth Amendment privilege against self-incrimination. He also argues that the supposed requirement that the defendant enter into a plea agreement with the government to argue a fast-track disparity violates the procedural and equal protection aspects of the Fifth Amendment Due Process Clause. Finally, he argues that "this court lacks the authority to impose prerequisites for fast track." Although we are skeptical about these arguments for various reasons, we address

and reject these theories together because they are all based on the same mistaken view that *Ramirez* placed obligations on the defendant. It did not.

*Ramirez* spelled out the circumstances under which it would and would not be an error for a district judge to reject a fast-track disparity mitigation argument without giving reasons on the record. As we said in *Ramirez*, itself, "[n]othing in this opinion precludes a district court judge from considering a mitigation argument." 675 F.3d at 641 n.2. Anaya-Aguirre's rights could not have been infringed in any of the ways he claims. *Ramirez* simply clarified what constitutes a fast-track disparity argument with enough substance to require the district court to respond to it.

Anaya-Aguirre argues that if *Ramirez* requires defendants to tell the sentencing court where the defendant would *not* be eligible for a fast-track sentence, that requirement violates the defendant's Fifth Amendment privilege against self-incrimination. The relationship of the privilege against self-incrimination to a defendant's voluntary decision to make a mitigating argument at sentencing for which he clearly has the burden of proof is tenuous at best. It is not unusual or unconstitutional to require or at least to expect a defendant who seeks leniency in sentencing to accept responsibility and to be candid with the court about his crime. But even if there were a theoretical foundation for this argument, again, *Ramirez* does not require the defendant to do anything, nor does it create prerequisites or requirements that a defendant must meet before being able to present this argument in mitigation.

Even the narrow issue *Ramirez* addressed does not *require* the defendant to tell the sentencing court in which districts he would not be eligible for a fast-track sentence. *Ramirez* states that a defendant would be "well advised to provide information on eligibility and the likely imprisonment range in any other district in which he would qualify for a fast-track sentence and also provide a candid assessment of the number of programs for which he would not qualify." 675 F.3d at 636. This is a recommendation, not a requirement, and this claim therefore fails without needing further analysis. The same logic disposes of Anaya-Aguirre's claim that *Ramirez* is unconstitutional because it requires a plea agreement with the government; it requires no such thing.

The argument that this court lacks the authority to impose prerequisites for fast-track sentences fails for the same reasons. We have never imposed requirements that a defendant must fulfill before making a fast-track disparity argument at sentencing. Defendants may make any arguments they wish, and district judges retain broad discretion in considering arguments in aggravation and mitigation. In *Ramirez* we established only a framework telling sentencing judges when they need to address specifically this particular mitigation argument. We thus reject all of these arguments by Anaya-Aguirre.

D.  *Due Process and "Retroactive" Application of Ramirez*

Finally, Anaya-Aguirre argues that his sentence was unconstitutional on the theory that the district court

applied the expectations of *Ramirez* retroactively. The short answer to that argument is that we applied the ruling in *Ramirez* to the appellants in the *Ramirez* appeals themselves. Moreover, Anaya-Aguirre failed to satisfy even the known expectations already set forth in the *Reyes-Hernandez* opinion: that he show he would have been eligible for fast-track status and that he would have opted for that approach. In fact, he did not. He did not plead guilty promptly, but waited four months after indictment to do so. He did not offer a waiver of appellate rights at that time, waiting another six months until he was sentenced to offer such a waiver. Even then he did so in only a conditional way. He also did not show that he had met the Attorney General's original minimum criteria for eligibility, which includes accepting the government's version of the offense. See 2003 DOJ Memorandum (listing five universal requirements defendant must satisfy to be eligible for a fast-track sentence). Anaya-Aguirre's due process theory thus fails without even exploring some of the more fundamental problems with the theory.

The judgment of the district court is AFFIRMED.