In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-3308

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

STEVEN SALUTRIC,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 11 CR 916— **John W. Darrah**, *Judge.*

ARGUED NOVEMBER 5, 2014 — DECIDED JANUARY 8, 2015

Before BAUER, ROVNER, and TINDER, *Circuit Judges.*

ROVNER, *Circuit Judge.* Steven Salutric pleaded guilty to committing wire fraud in violation of 18 U.S.C. § 1343 and was ordered to serve a below-Guidelines sentence of 96 months. In this appeal, Salutric contends that the district court committed procedural error at sentencing when it took into consideration two victim impact statements submitted by an individual and organization who were not victims of the charged offense. We

conclude that the district court did not plainly err in considering these statements and therefore affirm the sentence.

## I.

Salutric was an investment adviser whose firm, Results One Financial, LLC ("Results One"), had more than 1,000 clients and managed approximately $160 million in assets. Salutric himself had approximately 100 clients, most of them individuals and small businesses. Charles Schwab & Co. ("Schwab") served as custodian of the client assets managed by Results One.

From approximately December 2002 through January 2010, Salutric defrauded a number of his clients by covertly diverting assets from their accounts at Schwab and placing them in unapproved, high-risk investments. These included restaurants, car dealerships, real estate developments, and an entertainment investment company. Salutric had an interest in some of these investments; others were enterprises in which his personal associates had a stake. Salutric's clients were wholly unaware that their funds were being invested in these ventures; they believed that their money was placed in low-risk mutual funds and bonds.

Salutric represented via falsified paperwork—including forged signatures—that he had his clients' permission to make the withdrawals from the accounts at Schwab. In some instances, he transferred funds among client accounts at Schwab in order to conceal the diversion of assets; he also used a corporate bank account to provide cover for some of the transfers.

Not surprisingly, the diversion of assets resulted in substantial losses to the clients involved, among them six individuals and retirement plans covering some 72 employees employed by three small businesses. The losses to these victims totaled $3,898,818.

After the scheme came to light, Salutric pleaded guilty to a one-count information charging him with committing wire fraud. Prior to sentencing, the probation officer received three victim impact statements regarding Salutric's misdeeds. One of the statements was written by the daughter of someone who was a named victim of the scheme to which Salutric had pleaded guilty. The other two—one written by Joyce Vassil and the other by a past president of the Carol Stream, Illinois Rotary Club which had invested funds with Salutric—were not written by or submitted on behalf of named victims of the charged offense. Both statements described wrongdoing by Salutric similar to that suffered by the victims of the charged wire fraud offense. Vassil's statement did not fully describe Salutric's alleged wrongdoing. The statement indicated that Salutric had served as a bookkeeper and financial advisor to herself and her restaurateur husband for eighteen years; that they (apparently) had opened a second restaurant in reliance on Salutric's promise of financial support from a fictitious investment group; that Salutric had further deceived and harmed them through "bogus paperwork, forged documents, and manipulated bank accounts," R. 18 at 5; and that Salutric's misdeeds had forced them to close the second restaurant and resort to a declaration of bankruptcy. The Rotary Club statement averred that Salutric, while serving as treasurer of the club in 2009, had stolen $20,000 from club coffers, funds that

were meant for scholarships and other charitable endeavors. R. 19. The probation officer circulated each of the statements to the parties in advance of sentencing by way of supplements to the presentence report ("PSR"). The body of the PSR made no mention of the Vassil or Rotary Club statements.

At the outset of the sentencing hearing, the district judge inquired of the parties whether they had any objection to the PSR. The government offered a correction to the loss amount and the defense clarified one point regarding the status of a pending civil suit against Salutric. The court proceeded to adopt the PSR, including its Guidelines calculations, which produced an advisory sentencing range of 151 to 188 months in prison. The court also noted the victim impact statements which had been distributed by way of supplements to the PSR (including the Vassil and Rotary Club statements) and indicated it had read and taken them into consideration. Neither party raised any objection with respect to these statements.

Vassil was present at the sentencing hearing, and her written submission indicated that she wished to read her statement to the court. When the court inquired of the parties whether they had an objection to Vassil speaking, defense counsel did object, pointing out that because she was not a victim of the charged offense, she did not have a right of allocution. *See* Fed. R. Crim. P. 32(i)(4)(B). The prosecutor concurred, noting that the conduct described in Vassil's letter/statement was "beyond the scope of this [information]." R. 48 at 6. In view of the objection, the court informed Vassil that she would not be permitted to address the court, but the court assured her that it had read her statement and would

consider it in sentencing Salutric. Neither party objected to the court's declaration that it would consider Vassil's statement.

Before allowing counsel to argue and Salutric to allocute, the court proceeded to summarize in some detail the parties' sentencing memoranda along with the other materials before it. The court again acknowledged the statements from Vassil and the Rotary Club, although it did not refer to the substance of either statement. By contrast, the court discussed in significantly greater detail many of the forty-eight letters which had been submitted on behalf of Salutric by family members, friends, and community figures detailing his long history of community service and otherwise praising his character.

The parties proceeded to make their respective cases to the court regarding a sentence. The defense argued for a below-Guidelines sentence of 44 months, whereas the government urged a sentence at the low end of the Guidelines range.

On evaluation of the section 3553(a) factors, the court concluded that a substantial sentence was warranted. The court acknowledged that Salutric had an "exemplary" record of community service, R. 48 at 41, that Salutric was genuinely remorseful and highly unlikely to commit another crime, that he had cooperated with the government, and that he and his family had already suffered significant hardship stemming from the disclosure of his offense. Moreover, the advisory Guidelines range, in the court's view, somewhat overstated the appropriate range of punishment for Salutric's criminal offense. On the other side of the ledger, the court noted that Salutric's offense had victimized both small businesses and individuals, a number of whom lost their life savings. The

court was also convinced that a significant punishment was warranted, not to deter Salutric specifically, but rather to deter others who might otherwise be tempted to engage in a similar offense that offered a potentially large payoff for the offender with a low risk of detection. The court ordered Salutric to serve a prison term of 96 months, a sentence roughly thirty percent below the low end of the Guidelines range.

## II.

Salutric contends that it was erroneous in two respects for the court to consider the statements from Vassil and Rotary Club. Because neither was a victim of the charged offense, he asserts that the court was categorically prohibited from taking their statements into account in arriving at an appropriate sentence. Secondarily, he contends that he was denied the opportunity to respond to the two statements and to demonstrate that they were not relevant to the court's sentencing decision. In particular, he asserts that he was prevented from showing that he did not commit the misdeeds with which he was charged in Vassil's statement.

Because both arguments are assertions of procedural error, they present questions of law as to which our review would ordinarily be de novo. *E.g.*, *United States v. Anaya-Aguirre*, 704 F.3d 514, 516 (7th Cir. 2013). However, Salutric did not raise these points below and therefore forfeited them.[1] A

---

[1] The government contends that Salutric did not merely forfeit, but waived, these arguments. There is, perhaps, a case to be made for waiver. By virtue of the probation officer's distribution of the victim impact statements to the parties, Salutric and his counsel knew that the two statements had been

(continued...)

forfeited argument will merit reversal only if the district court committed plain error. Fed. R. Crim. P. 52(b); *e.g.*, *United States v. Adigun*, 703 F.3d 1014, 1021 (7th Cir. 2012). An error rises to that level only if it amounts to "a clear error that affects a substantial right," and one that also implicates "the fairness, integrity, or public reputation of judicial proceedings." *United States v. Allen*, 529 F.3d 390, 395 (7th Cir. 2008) (internal quotation marks and citation omitted); *see United States v. Olano*, 507 U.S. 725, 732-37, 113 S. Ct. 1700, 1777-79 (1993).

It was not plain error for the court to take into consideration statements from an individual or group that was not a named victim of the charged offense. In arriving at an appropriate sentence, a sentencing judge necessarily must consider not only the offense of conviction but the defendant's broader criminal record and history. *See* § 3553(a)(1) & (2); *United*

---

[1] (...continued)

submitted to the court. The defense had multiple opportunities, both before and during sentencing, to make an objection, whether to the court considering the statements at all or to an inadequate opportunity to respond to the substance of the statements; yet no such objection was voiced. More to the point, defense counsel did specifically object to the prospect of Vassil addressing the court at sentencing but not to the court's declaration that it would consider her written statement along with that of the Rotary Club. The context might therefore suggest that Salutric's counsel made a considered decision to object only to allocution by Vassil but not to the court's consideration of the two written statements; and that scenario could be viewed as being consistent with a waiver rather than a forfeiture of any objection to the written statements. *See generally United States v. Jaimes-Jaimes*, 406 F.3d 845, 848 (7th Cir. 2005). But the waiver argument has been perfunctorily presented, and in order to give Salutric the benefit of the doubt, we will treat the issues as forfeited rather than waived.

*States v. Hankton*, 432 F.3d 779, 789-90 (7th Cir. 2005) (quoting *United States v. Hardamon*, 188 F.3d 843, 849-50 (7th Cir. 1999)). Uncharged criminal acts (and the injuries inflicted upon the victims of those acts) have a bearing on whether the offense of conviction was an aberration or part of a larger pattern of criminal behavior, the likelihood of the defendant re-offending, and the need for specific deterrence. *See, e.g.*, *United States v. Laraneta*, 700 F.3d 983, 987 (7th Cir. 2012). The Criminal Code makes clear that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense, which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence," 18 U.S.C. § 3661, and the Sentencing Guidelines likewise provide that the court has broad authority to consider any information about the defendant unless specifically proscribed by law, *see* U.S.S.G. § 1B1.4. *See also United States v. Tucker*, 404 U.S. 443, 446-47, 92 S. Ct. 589, 591 (1972). Consequently, the district court was not precluded from taking into consideration statements from victims of criminal acts other than those with which the defendant has been charged and convicted.

Of course, as the parties agree, due process requires that the defendant be sentenced on the basis of reliable information, *e.g.*, *United States v. Corona-Gonzalez*, 628 F.3d 336, 342-43 (7th Cir. 2010), which in turn entitles him to a reasonable opportunity to rebut any presentence information that he believes to be inaccurate, *e.g.*, *United States v. Johnson*, 997 F.2d 248, 254 (7th Cir. 1993). Salutric, as we have noted, contends that he was deprived of this opportunity, and in particular of

the chance to demonstrate that he did not commit the misdeeds of which Vassil's letter accused him.

But the record belies the notion that there was any due process violation here. The defense was placed on notice of Vassil's statement far in advance of sentencing: the record indicates that the probation officer supplemented the Presentence Report with a copy of Vassil's statement more than ten months before the sentencing hearing. R. 18. Moreover, it was clear at the outset of the sentencing hearing that the district court intended to consider Vassil's statement. Yet, as we have noted, the sole objection raised by the defense was to Vassil addressing the court in person; nothing was said about the content of her written statement, nor was there any request to rebut the averments of the statement or any contention that the defense needed additional time in order to make such a rebuttal. If, as Salutric now argues, Vassil's statement was inaccurate, it was Salutric's obligation to speak up. *Cf. United States v. Williams-Ogletree*, 752 F.3d 658, 664 (7th Cir. 2014) (defendant has obligation to make and support objection to any information in presentence report he believes to be inaccurate).

For the sake of completeness, we note that it is highly unlikely that consideration of Vassil's letter altered the district court's sentencing decision to Salutric's detriment. Vassil's statement alludes in general terms to criminal misconduct (including forged documents, manipulated bank accounts, and a fictitious investment group) that is similar to the offense with which Salutric was charged in this case—misconduct that apparently resulted in the loss of the Vassils' savings (although the amount is unspecified) and one of their two restaurants. At

worst, the court would have inferred from Vassil's statement that Salutric had harmed two people in addition to those named as victims of the charged offense. But we have no reason to assume that the experienced and able judge would have somehow been swayed by Vassil's statement, when the record before the court was much more developed as to what Salutric had done to the victims of the charged offense. Indeed, although the court indicated that it had read and considered both the Vassil and the Rotary Club statements, it did not dwell on the contents of either at sentencing, in contrast to the many letters submitted by Salutric's family, friends, and supporters, which it summarized in some detail. Moreover, in focusing on the magnitude of Salutric's criminal conduct, the court mentioned only the charged offense. Finally, the court, as we have noted, observed both that the Guidelines slightly overstated the appropriate punishment for Salutric's offense and that there was no need to specifically deter Salutric from committing another offense, observations which suggest that the additional wrongdoing charged in the Rotary Club and Vassil statements did not persuade the court that Salutric had a record of misdeeds that was unaccounted for in the charged offense.

### III.

For the reasons discussed, we find no plain error in the district court's decision to accept and consider the two statements submitted by an individual and organization who were not victims of the offense to which Salutric pleaded guilty. We therefore AFFIRM Salutric's sentence.