In the

# United States Court of Appeals

## For the Seventh Circuit

No. 23-1551

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

REIQUON GAINES,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:20-cr-00038-1 — **Steven C. Seeger**, *Judge.*

ARGUED DECEMBER 11, 2025 — DECIDED JANUARY 21, 2026

Before RIPPLE, SCUDDER, and KIRSCH, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Reiquon Gaines pleaded guilty to one
count of bank robbery under 18 U.S.C. § 2113(a). Following a
three-day sentencing hearing, the district court sentenced him
to 160 months' imprisonment. In this appeal, he raises several
challenges to the district court's sentencing determination.
For the reasons set forth in this opinion, we affirm the judg-
ment of the district court.

# I

## BACKGROUND

### A. Facts

On January 15, 2020, Mr. Gaines robbed a bank in Wilmette, Illinois, by jumping over the teller counter and demanding money from the teller. The teller unlocked the drawers, and Mr. Gaines removed approximately $7,900 in cash. He fled the bank and, later that day, used the cash to purchase a 2005 Honda Accord.

Three days later, the police approached Mr. Gaines as he was sitting in the driver's seat of the Honda. His three-year-old daughter was with him. Mr. Gaines gave his license to the police who, upon checking the license in their patrol car, discovered that he had an outstanding warrant for the bank robbery. As the officers walked back to his vehicle, Mr. Gaines fled. The police gave chase. The officers measured his speed at 61 miles-per-hour in a 30 mile-per-hour zone and observed Mr. Gaines's failure to stop at a stop sign. As Mr. Gaines approached a curve in the road, he lost control of the car and slid off the road into a snowbank. The police observed that Mr. Gaines nearly hit a tree as the Honda went off the road.

With his car stuck in the snow, Mr. Gaines fled on foot, leaving his daughter behind. Police found the child in the car without a seat belt on and also noted that there was no child car seat in the vehicle. Mr. Gaines was apprehended a short time later.

## B.   Proceedings in the District Court

A grand jury indicted Mr. Gaines for bank robbery in violation of 18 U.S.C. § 2113(a). He pleaded guilty on March 21, 2022.

A presentence report was prepared with recommendations about how to calculate the sentencing guidelines range for Mr. Gaines's offense. The report assigned a base offense level of 20. It then recommended an increase by two levels under Guidelines § 2B3.1(b)(1) for taking property of a financial institution, and two additional levels under Guidelines § 3C1.2 for reckless endangerment in fleeing from the police. The resulting applicable offense level was 24.

The report also concluded that Mr. Gaines was a career offender under Guidelines § 4B1.1(a). Relevant to this recommendation are four prior convictions for bank robbery. In 2017, Mr. Gaines had pleaded guilty to two counts of aiding and abetting bank robbery in violation of 18 U.S.C. § 2113(a).[1] Those convictions arose out of two robberies in El Paso, Texas, in which Mr. Gaines acted as a getaway driver. He and his accomplices obtained approximately $8,000 from one bank and approximately $7,800 from another. After each incident, Mr. Gaines posted photos and videos of himself on social media flaunting the stolen cash.

In 2018, in Illinois, Mr. Gaines pleaded guilty to one count of attempted bank robbery and one count of bank robbery in violation of 18 U.S.C. § 2113(a).[2] Mr. Gaines and his

---

[1] *United States v. Gaines*, No. 3:17CR119-002, R.118 (W.D. Tex. Jan. 24, 2018).

[2] *United States v. Gaines*, No. 1:16CR779-2, R.131 (N.D. Ill. June 18, 2018).

accomplices robbed two separate banks and, again, Mr. Gaines was the getaway driver. At the first bank, Mr. Gaines's accomplice dropped the money before leaving the bank, resulting in an attempt charge. At the second bank, they successfully obtained $2,867.

The report concluded that the current offense and these four prior convictions were "crimes of violence" within the meaning of Guidelines § 4B1.1(a). This conclusion elevated Mr. Gaines's criminal history category to VI and his offense level to 32.[3] Finally, the report recommended a three-level reduction because Mr. Gaines had accepted responsibility for his actions. Mr. Gaines's final offense level was 29. The calculated guidelines range for his offense level and criminal history category was 151 to 188 months' imprisonment.

The district court held the sentencing hearing over three days. At the beginning of the hearing, Mr. Gaines stated that apart from his objections to the guidelines calculations, he had no other objections to the report and agreed that the Government's version of the facts was true. The court subsequently adopted the facts in the presentence report. Mr. Gaines challenged the reckless endangerment enhancement and the career offender enhancement. He also submitted that his personal history contained mitigating factors.

---

[3] Guidelines § 4B1.1(b) provides that when the otherwise applicable offense level is less than the level indicated in the table in that subsection, the greater offense level indicated in the table applies. U.S. SENT'G GUIDELINES MANUAL § 4B1.1(b) (U.S. SENT'G COMM'N 2021). Mr. Gaines's otherwise applicable offense level was 24, so here it increased to 32 with the finding that he was a career offender.

With respect to the reckless endangerment enhancement, Mr. Gaines contended that his flight from the police did not constitute recklessness. The court disagreed and held that Mr. Gaines had recklessly created a substantial risk of death or serious bodily injury to others while fleeing from the police. The court specifically noted the danger inherent in driving at excessive speeds and failing to heed stop signs in snowy conditions. The court also emphasized the significant risk Mr. Gaines had created by failing to buckle his daughter in an appropriate seat and by leaving her in the vehicle alone in below-freezing temperatures late at night.

With respect to the career offender enhancement, Mr. Gaines maintained that he had never used violence in any of his bank robberies. The court again disagreed; it held that the present offense, as well as Mr. Gaines's previous bank robbery convictions, were categorically crimes of violence. The district court's final guidelines calculation therefore was consistent with the presentence report recommendation: a criminal history category of VI and offense level of 29, resulting in a range of 151 to 188 months.

Seeking to mitigate his sentence, Mr. Gaines also submitted that his youth, medical and mental health conditions, and drug addiction were mitigating factors. As detailed in the presentence report, he had reported using multiple drugs in various combinations almost daily from the time he was a teenager. He stated that he was under the influence of marijuana during the commission of the charged offense and asserted that, from his history of drug abuse, the court should infer that he was under the influence of drugs at the time of his prior offenses.

In considering these contentions, the district court decided to review the presentence investigation reports prepared in sentencing Mr. Gaines for the prior Illinois and Texas offenses. The district court acted sua sponte in obtaining these reports. It stated that its original purpose in doing so was to determine whether Mr. Gaines's prior convictions were within the calculated guidelines ranges, or whether the sentencing courts had deviated from the guidelines in some way. Although neither Mr. Gaines nor the Government had filed these reports with the district court, prior to the sentencing hearing, Mr. Gaines filed a motion to allow him to obtain all these reports. The court granted the motion, and therefore, both Mr. Gaines and the Government had access to these presentence reports.

The presentence report from Mr. Gaines's prior Illinois conviction included statements from a law enforcement officer, Special Agent Hogberg. Special Agent Hogberg had opined that Mr. Gaines "minimized" his involvement in the robberies and that his accomplices had stated that Mr. Gaines was the "mastermind" of the crimes.[4] The district court concluded that the details in the report from his previous Illinois conviction suggested "forethought" inconsistent with drug-induced behavior.[5] The court asked Mr. Gaines's counsel if there was any evidence to the contrary, and counsel stated that there was no direct evidence. Finding no evidence in the record supporting Mr. Gaines's claim that his previous convictions were directly caused by his drug use, the court rejected this argument.

---

[4] R.168 at 37:12–20.

[5] *Id.* at 38:12–23.

The district court ultimately imposed a sentence of 160 months' imprisonment. The court noted that, even if it had decided not to apply the reckless endangerment and career offender enhancements, it would have imposed the same sentence.

## II

## DISCUSSION

We first consider Mr. Gaines's arguments that the district court erred in calculating the Sentencing Guidelines. We review the district court's application of the Sentencing Guidelines de novo and its factual findings for clear error. *United States v. Dickerson*, 42 F.4th 799, 804 (7th Cir. 2022).

### A.

Under the Guidelines, designation as a career offender is appropriate when (1) the defendant is at least eighteen years of age at the time of the offense; (2) the present offense is a felony and either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. U.S. SENT'G GUIDELINES MANUAL § 4B1.1(a) (U.S. SENT'G COMM'N 2021). Mr. Gaines submits that the district court erred in determining that his present offense and prior convictions constitute crimes of violence.

Guidelines § 4B1.2 specifically designates robbery as a crime of violence. *See id.* at § 4B1.2(a)(2). Moreover, commentary to this definition specifies that a "crime of violence" includes "the offenses of aiding and abetting, conspiring, and attempting to commit such offenses." *Id.* at § 4B1.2 cmt. n.1.

Mr. Gaines nevertheless argues that his current offense is not a crime of violence because his own actions in the commission of this crime were not violent. But it is too late in the day to maintain that federal bank robbery as proscribed by 18 U.S.C. § 2113(a) is not a crime of violence or that a bank robbery perpetrated by intimidation is somehow not within that definition. We have held consistently that federal bank robbery is a crime of violence, even when it is completed through intimidation. *United States v. Campbell*, 865 F.3d 853, 857 (7th Cir. 2017); *United States v. Jones*, 932 F.2d 624, 625 (7th Cir. 1991).

**B.**

Mr. Gaines also challenges the reckless endangerment enhancement. Guidelines § 3C1.2 provides: "If the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer, increase by 2 levels." U.S. SENT'G GUIDELINES MANUAL § 3C1.2 (U.S. SENT'G COMM'N 2021). Mr. Gaines does not challenge the district court's findings of fact; he argues only that the facts here do not constitute recklessness.

We cannot accept this argument. Mr. Gaines fled from the police, late on a snowy night. His three-year-old daughter was in the car without any safety restraint. Mr. Gaines, at approximately twice the speed limit, ignored a stop sign and eventually lost control of the car and slid off the road. He then abandoned his daughter and continued his escape on foot. We consistently have held that high-speed and erratic driving create a substantial risk of death or serious bodily injury. *United States v. Harris*, 124 F.4th 1088, 1091 (7th Cir. 2025) (driving at high speeds and failing to stop at stop signs in snowy

conditions was "more than sufficient" to satisfy recklessness); *see also United States v. Hibbett*, 97 F.4th 477, 481 (7th Cir. 2024) (collecting cases). Engaging in this conduct with his young daughter in the car without any restraints only aggravates Mr. Gaines's recklessness. Here, Mr. Gaines created a substantial risk to other motorists, pedestrians, and his own daughter. The district court correctly applied the reckless endangerment enhancement.

## C.

Next, Mr. Gaines argues that amendments to the Sentencing Guidelines warrant remand for resentencing. We cannot accept this contention. First, the district court did not err by failing to consider pending amendments to the Guidelines. As a general rule, the district court must apply the guidelines "in effect on the date the defendant is sentenced." 18 U.S.C. § 3553(a)(4)(A)(ii); *see also United States v. Alexander*, 553 F.3d 591, 592 (7th Cir. 2009) (rejecting the argument that the district court erred by failing to consider pending amendments).

Remand for resentencing in light of an amendment to the Guidelines is appropriate, however, when the amendment has retroactive effect and it is not obvious that the court would have imposed the same sentence in light of the amendment. *United States v. Claybron*, 88 F.4th 1226, 1230 (7th Cir. 2023).

Mr. Gaines specifically points to two amendments: Amendment 821 and Amendment 829. U.S. SENT'G GUIDELINES MANUAL AMEND. 821 (U.S. SENT'G COMM'N 2023); *Id.* at AMEND. 829. Only one of these, Amendment 821, has a retroactive effect. *See id.* at AMEND. 825. But Amendment 821, applied to Mr. Gaines, would not change his sentence. This

amendment altered the way district courts calculate criminal history categories. Under the amendment, courts add one criminal history point, rather than two, to the criminal history score of a defendant who committed an offense while under a criminal justice sentence and had seven or more criminal history points. *See id.* at AMEND. 821. For defendants who are not career offenders, the criminal history category is computed by adding criminal history points pursuant to Guidelines § 4A1.1. For such defendants, Amendment 821 changes that computation. But as we explained earlier, Mr. Gaines is properly considered a career offender, and his criminal history category was automatically fixed at VI by virtue of that determination. U.S. SENT'G GUIDELINES MANUAL § 4B1.1(b) (U.S. SENT'G COMM'N 2021). Therefore, Amendment 821 could not reduce Mr. Gaines's sentence. *See, e.g., United States v. Benson*, 770 F. Supp. 3d 1070, 1072–73 (E.D. Mich. 2025).

### D.

Finally, Mr. Gaines argues that the district court erred by considering the details of his previous Illinois robberies when applying the § 3553(a) factors. We review de novo whether the district court committed procedural error in sentencing. *See United States v. Anaya-Aguirre*, 704 F.3d 514, 516 (7th Cir. 2013). We review the district court's decision to credit evidence as reliable at sentencing for an abuse of discretion. *United States v. Coleman*, 138 F.4th 489, 511 (7th Cir. 2025).

District courts exercise discretion in sentencing to determine a sentence that is "sufficient, but not greater than necessary," 18 U.S.C. § 3553(a), to achieve "retribution, deterrence, incapacitation, and rehabilitation." *Rosales-Mireles v. United States*, 585 U.S. 129, 133 (2018) (quoting *Tapia v. United States*, 564 U.S. 319, 325 (2011)). The sentencing guidelines

calculation, being merely advisory, *United States v. Booker*, 543 U.S. 220, 245 (2005), establishes the framework for the exercise of judicial discretion. *See Gall v. United States*, 552 U.S. 38, 46–47 (2007). Once the sentencing guidelines range is determined, the district court is required to select a sentence in light of the factors set out in 18 U.S.C. § 3553(a). *Booker*, 543 U.S. at 261; *Esteras v. United States*, 606 U.S. 185, 191 (2025). This determination includes a consideration of "the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

Within this context, sentencing courts have discretion to "conduct an inquiry broad in scope, largely unlimited either as to the kind of information [they] may consider, or the source from which it may come." *Pepper v. United States*, 562 U.S. 476, 489 (2011) (quoting *United States v. Tucker*, 404 U.S. 443, 446 (1972)). That traditional discretion was expressly preserved by Congress in 18 U.S.C. § 3661, which provides that there is "[n]o limitation … on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661; *Pepper*, 562 U.S. at 489. The Supreme Court has explained that the broad language of § 3661 prevents "blanket prohibition[s] against considering certain types of evidence at sentencing." *Id.* at 491 (quoting *United States v. Watts*, 519 U.S. 148, 152 (1997)). We have observed that the broad language of § 3661 permits that, in some cases, it is "entirely appropriate" for the sentencing court to impose a sentence that takes into consideration the defendant's conduct related to prior convictions. *United States v. Carter*, 961 F.3d 953, 959–60 (7th Cir. 2020); *United States v. Jerry*, 55 F.4th 1124, 1133 (7th Cir. 2022) ("This broad language includes conduct related to both prior convictions and the conduct for

which the defendant is being sentenced."). So long as the information relied on by the district court is reliable, *see United States v. Sunmola*, 887 F.3d 830, 837 (7th Cir. 2018), and the defendant has a reasonable opportunity to rebut the information, *see United States v. Salutric*, 775 F.3d 948, 952 (7th Cir. 2015), there has been no error. The district court therefore was entitled to take into consideration the information contained in the presentence reports from Mr. Gaines's earlier convictions.

There is, moreover, another reason for justifying the district court's consulting the earlier presentence reports. Mr. Gaines put his prior conviction conduct at issue when he asked the district court to infer that he was under the influence of drugs during his prior offenses. The district court examined the presentence reports from Mr. Gaines's prior convictions to determine if there was any evidence supporting this inference. Accordingly, the information in the presentence reports was relevant to the § 3553(a) issues raised by the defendant. Mr. Gaines had access to the same presentence reports.

When Mr. Gaines presented his drug-use mitigation argument, the court asked his counsel if he was aware of any evidence of any kind that the defendant was under the influence of any substance during the prior offenses, and counsel responded that he was not.[6] Mr. Gaines asked the court to draw an inference, but the court was prohibited from basing its sentencing determination on speculation or unfounded allegations. *United States v. Halliday*, 672 F.3d 462, 475 (7th Cir. 2012). Therefore, the district court was entitled to review the reports

---

[6] R.168 at 38:12–39:11.

to assess Mr. Gaines's mitigation arguments. The district court did not abuse its discretion by crediting statements of Special Agent Hogberg in the prior presentence report. Other than criticizing the statements as hearsay,[7] Mr. Gaines provides no reason that the statements of Special Agent Hogberg were unreliable. *United States v. Maiden*, 606 F.3d 337, 339 (7th Cir. 2010) (explaining that when a district court credits information as reliable, it is the defendant's burden to show that it is inaccurate or unreliable).

Notably, although the district court did not find any evidence supporting Mr. Gaines's contention that he was under the influence of drugs during his prior offenses, it *did* ultimately consider Mr. Gaines's general history of drug usage to be a mitigating factor.[8] "A sentence is reasonable if the district court gives meaningful consideration to the factors

---

[7] Mr. Gaines argues that the statements relied on by the district court were hearsay. But the court can consider hearsay statements contained in presentence reports if it is "well supported and appears reliable." *United States v. Richardson*, 812 F.3d 604, 605–06 (7th Cir. 2016) (quoting *United States v. Heckel*, 570 F.3d 791, 795 (7th Cir. 2009)). The statements at issue here were originally uttered by Special Agent Hogberg, and the presentence report specifically described them as Special Agent Hogberg's opinion based on Mr. Gaines's post-arrest statement. Again, Mr. Gaines presents no reason to believe that these statements were not reliable. Notably, Special Agent Hogberg was also interviewed to corroborate the offense conduct in the instant case and Mr. Gaines did not challenge his reliability there.

[8] R.168 at 70:19–22, 71:3–6.

enumerated in 18 U.S.C. § 3553(a)." *United States v. Shannon*, 518 F.3d 494, 496 (7th Cir. 2008).

The judgment of the district court is affirmed.

AFFIRMED