In the

# United States Court of Appeals

## For the Seventh Circuit

No. 21-3093

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MICHAEL E. DICKERSON,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 4:19-cr-40070 — **Sara Darrow**, *Chief Judge.*

ARGUED MAY 25, 2022 — DECIDED AUGUST 2, 2022

Before RIPPLE, ROVNER, and JACKSON-AKIWUMI, *Circuit Judges*.

RIPPLE, *Circuit Judge.* Michael Dickerson was charged with, and pleaded guilty to, being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Both the Government and Mr. Dickerson agree that the district court correctly calculated his offense level and criminal history category, which together yielded a Guidelines range of 51 to 64 months' imprisonment. After considering the sentencing factors set forth in

18 U.S.C. § 3553(a), however, the district court imposed an above-Guidelines sentence of 84 months.

Mr. Dickerson claims that the district court committed both procedural and substantive error in imposing his sentence. Finding no reversible error, we affirm the district court's judgment.

# I

## BACKGROUND

**A. Facts**

On October 3, 2019, the Rock Island 9-1-1 operator received a call reporting that an individual had been threatened with a gun on 13th Street. The gunman then got into a red Cadillac Eldorado driven by another individual and left the scene.

Officer Brieanne Lonergan of the Rock Island Police Department was in the area and responded. She saw a red Cadillac pulling out of a driveway just around the corner from where the incident had been reported. Officer Lonergan pulled behind the Cadillac, and Mr. Dickerson, who had been driving the Cadillac, stepped out of the car. As he did so, he dropped "a black magazine to a semiautomatic handgun."[1] He tried to pick up the magazine, but Officer Lonergan ordered him to get back in the car; Mr. Dickerson then tried to kick it.

Officer Lonergan recognized Mr. Dickerson and knew that he was a convicted felon. She handcuffed and searched him. The search uncovered another magazine loaded with several

---

[1] R.54 (Tr. of Suppression Hr'g) at 17–18.

nine-millimeter rounds, an empty magazine, and a knife. Other officers arrived at the scene and placed Mr. Dickerson and his female passenger in separate squad cars. The male passenger, who had threatened the victim, apparently had fled when the police approached.

While other officers finished the search of the Cadillac, Officer Lonergan went to the scene of the 9-1-1 call and spoke to the victim, Nicholas Bartke. Bartke related that he and his fiancée were walking from their residence to their car when they saw a red Cadillac parked at the end of the street. As they moved toward their vehicle, the Cadillac's passenger began walking toward them yelling something like *"Who are you?"*[2] The driver, later identified as Mr. Dickerson, drove the Cadillac in reverse alongside the passenger. Mr. Dickerson backed up until he was parallel with Bartke's car, thus preventing Bartke from escaping on foot. Mr. Dickerson's passenger then pulled out a semiautomatic handgun, pointed it at Bartke's face, and said, *"This is not a game."*[3] He then asked Bartke if he had *"come from Russ's or Ross's house."*[4] Seeing Bartke at closer range, Mr. Dickerson informed his passenger that Bartke was *"not our guy."*[5] The passenger then got back into the Cadillac, and Mr. Dickerson drove off. At that point, Bartke called 9-1-1.

---

[2] *Id.* at 26.

[3] *Id.* at 27.

[4] *Id.*

[5] *Id.*

After interviewing Bartke, Officer Lonergan took him to the location where Mr. Dickerson had been apprehended. Bartke positively identified the Cadillac as the car involved in the encounter and Mr. Dickerson as its driver.

The search of the Cadillac uncovered a black or dark blue nine-millimeter handgun under the driver's seat, a rifle, a bulletproof vest, and a sickle. Officers also found other items that appeared to be the proceeds of a recent burglary, including a coin collection, amplifiers, power drills, and subwoofers.

Later, while in custody, Mr. Dickerson used a jail phone to call his male passenger. Mr. Dickerson left a voicemail stating: "Hey Bro I told you I'm only in here because they were … looking for me and you on that s---. For that robbery."[6]

**B. District Court Proceedings**

A grand jury indicted Mr. Dickerson with being a felon in possession of firearms and ammunition in violation of 18 U.S.C. § 922(g)(1). Mr. Dickerson moved to suppress both the evidence recovered at the scene as well as Bartke's identification. Following the denial of the motion, Mr. Dickerson entered a guilty plea.

The Probation Office prepared a presentence report ("PSR"), which set Mr. Dickerson's base offense level at 20. It then applied a four-level enhancement under Sentencing

---

[6] R.69 (Gov't's Sent'g Mem.) at 3.

Guideline § 2K2.1(b)(6)(B)[7] because Mr. Dickerson possessed the weapon in connection with another felony offense. After receiving a three-level reduction for acceptance of responsibility, the PSR calculated Mr. Dickerson's total offense level to be 21. Mr. Dickerson's criminal history subtotal was 14, to which two points were added because he committed the instant offense while on parole for another conviction. Mr. Dickerson's offense level of 21 and criminal history category of VI resulted in an advisory Guidelines range of 77 to 96 months' imprisonment.

At the sentencing hearing, the district court determined that the Government failed to prove facts supporting the four-level enhancement under § 2K2.1(b)(6)(B). According to the court, the Government had not proffered sufficient evidence to show that there was a "common scheme … to commit a robbery."[8] The court did believe that Mr. Dickenson had possessed the firearm "during the course and commission of … aggravated assault."[9] However, aggravated assault was not a

---

[7] The Guideline provides:

> If the defendant—
>
> …
> (B) used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense, increase by **4** levels.

U.S.S.G. § 2K2.1(b)(6).

[8] R.80 (Tr. of Sent'g Hr'g) at 62.

[9] *Id.* at 64.

felony in Illinois and therefore could not support the enhancement. The court recalculated Mr. Dickerson's new offense level to be 17, which yielded a new advisory Guidelines range of 51 to 63 months' imprisonment.

Although the district court did not believe there was sufficient evidence to support the enhancement, it noted that it could "consider this evidence in terms of the 3553(a) factors regarding the seriousness of the offense conduct or any other relevant sentencing factor that the parties … argue[d] to the Court."[10] Turning to those factors, the court observed that on the night of the offense, Mr. Dickerson was driving around with a car full of guns and ammunition. When his passenger threatened Bartke, Mr. Dickerson's response—that Bartke was not the person they were looking for—indicated that Mr. Dickerson "knew exactly what [they] intended to do that night if [they] found the right guy."[11] Thus, the court believed that Mr. Dickerson's sentence needed to reflect the fact that it was more serious than if "somebody … just ha[d] a firearm as a felon maybe in their closet at home."[12]

The district court also found Mr. Dickerson's personal history and characteristics "indicate[d] a very, very high likelihood of risk to recidivate."[13] The court explained that Mr. Dickerson's criminal history score did not reflect the seriousness of Mr. Dickerson's crimes or the extent of his criminal

---

[10] *Id.* at 65.

[11] *Id.* at 77.

[12] *Id.*

[13] *Id.* at 78–79.

history. The district court observed that, whereas "it takes 13 or more [points] to get to a Category VI,"[14] Mr. Dickerson had amassed 16 criminal history points. Additionally, Mr. Dickerson had an "almost uninterrupted pattern" of violent criminal conduct from the time he was seventeen,[15] and prior interventions had not deterred his criminal behavior.

The district court concluded that "an upward variance from the advisory guideline range [wa]s needed to protect the public" from Mr. Dickerson and to "provide a specific deterrence for – to address the seriousness of the offense conduct and also to better and more adequately capture" what the court believed was "an extreme risk to recidivate in a manner that puts the public in harm's way."[16] The district court therefore sentenced Mr. Dickerson to 84 months' imprisonment.

## II

On appeal, Mr. Dickerson asks us to review both procedural and substantive aspects of his sentence. First, he claims that the district court committed procedural error by speculating that he knowingly joined his passenger's plan to hold Bartke at gunpoint. Second, he maintains that the district court procedurally erred in failing to address whether his above-Guidelines sentence would result in unwarranted sentencing disparities. Finally, he maintains that the sentence imposed by the district court was substantively unreasonable because it reflected an idiosyncratic view of his crime and

---

[14] *Id.* at 79.

[15] *Id.* at 79, 83 (detailing "pattern" of violent crimes).

[16] *Id.* at 83–84.

overemphasized particular § 3553(a) factors. We will address each of these contentions.

## A. Procedural Error

To determine whether the district court committed significant procedural error

> we examine whether the district court: i) properly calculated the Guidelines range; ii) recognized that the Guidelines range was not mandatory; iii) considered the sentencing factors in 18 U.S.C. § 3553(a); iv) selected a sentence based on facts that were not clearly erroneous; and v) adequately explained the chosen sentence including an explanation for any deviation from the Guidelines range.

*United States v. Lockwood*, 840 F.3d 896, 900 (7th Cir. 2016). "We review the judge's application of the sentencing guidelines for procedural error *de novo*, and we review factual findings for clear error." *United States v. Wallace*, 991 F.3d 810, 814 (7th Cir.), *cert. denied*, 142 S. Ct. 362 (2021). A finding is "clearly erroneous only when, 'after considering all of the evidence, the reviewing court is left with the definite and firm conviction that a mistake has been made.'" *United States v. Cruz-Rea*, 626 F.3d 929, 938 (7th Cir. 2010) (quoting *United States v. Wyatt*, 102 F.3d 241, 246 (7th Cir. 1996)). Our "task on appeal," therefore "is not to see whether there is any evidence that might undercut the district court's finding; it is to see whether there is any evidence in the record to support the finding." *Id*. (quoting *United States v. Wade*, 114 F.3d 103, 105 (7th Cir. 1997)).

Here, Mr. Dickerson first maintains that the district court erred by impermissibly speculating that he knew his passenger was armed and that he engaged in a joint effort to confront Bartke. The district court's finding was far from speculation. It was a permissible conclusion solidly grounded in the record. After Mr. Dickerson's passenger drew a gun on Bartke, Mr. Dickerson stated, "That's not our guy." This statement supports the conclusion that Mr. Dickerson and his passenger jointly had decided to locate a particular individual and, at the very least, to coerce him into providing them with information.

Mr. Dickerson was an active participant in the intimidation of Bartke. He pulled his vehicle next to Bartke's car to prevent him from evading his passenger's questions and threats. Mr. Dickerson's vehicle contained, moreover, firearms, ammunition, and a bulletproof vest. Given the mutual goal, the presence of weapons, and Mr. Dickerson's record of involvement in violent crimes, it was altogether reasonable for the district court to conclude that Mr. Dickerson knew that his passenger was carrying a weapon and anticipated the use of that weapon. *See United States v. Salem*, 657 F.3d 560, 563 (7th Cir. 2011) ("The district court may draw reasonable inferences from the record in making its factual findings at sentencing.").

Mr. Dickerson next claims procedural error in the district court's failure to consider whether his above-Guidelines sentence would result in unwarranted sentencing disparities with other § 922(g) offenders with a criminal history category of VI. Mr. Dickerson contends that "[s]ince criminal history points, recidivism, and the need for deterrence are ingredients that are baked into the advisory Guidelines, the district

court had to consider whether an upward variance would create a sentencing disparity between Mr. Dickerson and similar defendants."[17]

Mr. Dickerson's contention finds no support in governing law. The district court's methodology was straightforward. As required by the case law, the district court correctly calculated the Guidelines range. It then considered the nature of Mr. Dickerson's offense and concluded that it was more serious than simple possession of a firearm: Mr. Dickerson was driving around with weapons in his car, looking for a specific person to confront, and ended up putting "innocent folks … in serious harm's way."[18] The court also considered Mr. Dickerson's "almost uninterrupted pattern of criminal conduct" since he was seventeen and "the trend in terms of the type of offenses that [he] commit[ted]," including "aggravated robberies, aggravated assaults, … assault and domestic battery."[19] Given these circumstances, the court concluded that

> an upward variance from the advisory guideline range [wa]s needed to protect the public from [Mr. Dickerson] and … provide a specific deterrence for—to address the seriousness of the offense conduct and also to better and more adequately capture … an extreme risk to

---

[17] Appellant's Br. at 21–22 (citing *United States v. Perez-Rodriguez*, 960 F.3d 748, 758 (6th Cir 2020)).

[18] R.80 at 77.

[19] *Id.* at 79, 83.

recidivate in a manner that puts the public in harm's way.[20]

Thus, the district court carefully considered the Guidelines range and explained in detail why a sentence within that range would not reflect the seriousness of Mr. Dickerson's crime, would not adequately deter him in the future, and would not adequately protect the public. *See* 18 U.S.C. § 3553(a)(1)–(2). The court fulfilled its responsibility to give "an 'adequate statement' of the applicable factors." *United States v. Stephens*, 986 F.3d 1004, 1010 (7th Cir. 2021) (quoting *United States v. Barr*, 960 F.3d 906, 914 (7th Cir. 2020)). It was not obligated to "address every § 3553(a) factor in checklist fashion." *United States v. Shannon*, 518 F.3d 494, 496 (7th Cir. 2008). Here, moreover, there is no indication that the district court was unaware that setting a Guidelines range takes into account the seriousness of the defendant's crime *and* his criminal history. The court has no obligation to state the obvious.

Finally, § 3553(a)(6) does not speak to a need to avoid *all* sentence disparities; rather, it requires the court to consider the need to avoid *unwarranted* sentencing disparities. *See United States v. Bridgewater*, 950 F.3d 928, 936 (7th Cir. 2020). Indeed, the other § 3553(a) factors *require* a district court to "tailor its sentence to the particular defendant" and the circumstances of his or her crime. *Id.* Here, the district court simply concluded that Mr. Dickerson's record, which included more than the minimum criminal history points necessary to attain category VI status, warranted a more severe sentence. In plain terms, the district court reasonably concluded that Mr. Dickerson presented as something other than

---

[20] *Id.* at 83–84.

the usual category VI defendant. The court explained why he posed a special danger to the public, and the court addressed that consideration in arriving at a sentence.

### B. Substantive Error

Mr. Dickerson's contention that his sentence is substantively unreasonable continues the theme presented in his procedural contentions. He maintains that his "sentence is substantively unreasonable because it reflects the district court's idiosyncratic view of the crime's seriousness, overemphasizes other § 3553(a) factors, and improperly relies on facts common to all defendants in criminal history category VI."[21] He maintains that, in imposing its sentence, "the district court trained its attention on reasons for a high sentence even though those reasons were already captured in the offense's element (*i.e.*, Mr. Dickerson is a felon) or in the Guidelines criminal history category VI (*i.e.*, past convictions and their indication of potential recidivism)."[22]

"We review for abuse of discretion the substantive reasonableness of a sentence, considering the judge's explanation of his reasons for imposing the sentence." *United States v. Porraz*, 943 F.3d 1099, 1104 (7th Cir. 2019). We certainly "do 'not apply a presumption of unreasonableness' to a sentence 'outside the Guidelines range.'" *United States v. Henshaw*, 880 F.3d 392, 396 (7th Cir. 2018) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). As long as the court gives an adequate justification, it "may impose a sentence above the guidelines range if [it] believes the range is too lenient." *United States v. Hayden*, 775

---

[21] Appellant's Br. 22 (emphasis removed).

[22] *Id.* at 28.

F.3d 847, 849 (7th Cir. 2014). "We afford significant deference to carefully explained upward departures." *Lockwood*, 840 F.3d at 903.

At the heart of Mr. Dickerson's unreasonableness argument is language employed by the district court at the beginning of its statement of reasons:

> Here, as you might guess I'm about to say, I think this is pretty serious because your status as a felon, as you know, prohibits you from possessing a firearm because Congress has decided that that's a public safety concern. And you kind of proved them right because of the events that occurred on the date that you were arrested.[23]

According to Mr. Dickerson, this statement reveals that the district court's decision to impose an above-Guidelines sentence was based on nothing more than the fact that he, a felon, had been found in possession of a firearm. However, he continues, his status as a felon was an element of the offense of conviction, and "[a]n element of an offense doesn't double as an aggravating factor that supports an upward variance."[24]

We cannot accept either Mr. Dickerson's statement of the law or the import that he assigns to the district court's introductory statement. Even if some of the defendant's conduct "was accounted for in the guidelines calculation," a sentencing court is not "bar[red] … from weighing the information

---

[23] R.80 at 76.

[24] Appellant's Br. 23.

differently than the Sentencing Commission." *Hayden*, 775 F.3d at 850. More importantly, the quoted language was only the starting point for an eleven-page recitation as to why the district court believed an above-Guidelines sentence was appropriate. The district court's statement, when read in its entirety, more than adequately explains the sentence imposed. *Cf. United States v. Shaw*, No. 21-1692, 2022 WL 2448254, at *8 (7th Cir. July 6, 2022) ("A defendant cannot obtain reversal [of his sentence] merely by identifying statements that appear problematic when taken out of context ….").

Mr. Dickerson also maintains that neither recidivism nor criminal history alone can "justify a significant upward variance."[25] However, the district court's statement of reasons discusses the severity of Mr. Dickerson's crime; Mr. Dickerson's 16 criminal history points when only 13 are required for a criminal history category of VI; Mr. Dickerson's "almost uninterrupted pattern of criminal conduct" since he was 17;[26] the lack of deterrent effect of prior punishments; and the severity of the crimes that Mr. Dickerson had committed. All of these considerations—not a single factor in isolation—contributed to the district court's decision to impose an above-Guidelines sentence.

A district court enjoys "wide" discretion in the weight it gives § 3553(a) factors. *United States v. Melendez*, 819 F.3d 1006, 1013 (7th Cir. 2016) (quoting *United States v. Smith*, 721 F.3d 904, 908 (7th Cir. 2013)). Here, the district court weighed legitimate factors in fashioning Mr. Dickerson's sentence. It

---

[25] *Id.* at 26–27.

[26] R.80 at 79–83.

therefore did not abuse its wide discretion when it sentenced Mr. Dickerson to 84 months' imprisonment.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED